UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES** ) | |
| ) | |
| v. ) | Case No. 1:24-cr-508 |
| ) | |
| **REIFSCHNEIDER** ) | |
| ) | |
| ) | |

**DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE AN OFFENSE AND FOR SELECTIVE PROSECUTION**

Defendant Kayla Reifschneider, by and through counsel, hereby files this Motion to Dismiss for Failure to State an Offense and for Selective Prosecution.

*The Information fails to state an offense*

The Information charging Ms. Reifschneider with the boilerplate January 6 misdemeanors is perhaps the thinnest case of all of the 1,600 January 6 cases. The statement of facts does not allege a crime and for that reason, all of the charges should be dismissed.

The Information is 24 pages long, which is unheard of for a misdemeanor information outside of the January 6 context. The first 8 pages do not contain any facts that even suggest a crime, itt only contains a list of messages she sent prior to January 6. These pages should be disregarded in their entirety.

At the bottom of page 8, the Information states that she can be seen "near a police line." It does not say that she "crossed a police line" or that she "breached a police line." The information states that she approached "near a police line," which is not a crime. On the contrary, being "near the police line" implies that she observed what a reasonable person would consider the "line" that she was permitted to approach.

1

None of the pictures show her committing a crime and none of the allegations allege a crime. She is alleged to have yelled things. The substance of page 9 alleges that she was captured on video in the vicinity of another person who had a megaphone and called Nancy Pelosi a "bitch." It then goes on to allege that Ms. Reifschneider walked by and cheered. It is curious why this nonsense was even included in the Information, as it has nothing to do with her entering or remaining in a restricted area, and is obviously protected speech.

In another similar allegation, Ms. Reifschneider is alleged to be holding out a phone and filming as others assaulted police. This is also protected activity. There is no allegation that she participated or assisted in illegal conduct, or that she had any way of knowing that the area she was standing was restricted. On the contrary, the existence of a "police line" is evidence that she had every reason to believe that she was in a permitted area.

Most of the information includes allegations of conduct that allegedly occurred outside of the alleged restricted area and off of the Capitol grounds. These allegations cannot be part of the charges because the boilerplate January 6 misdemeanors are only applicable to conduct either within the restricted area or in the Capitol Building or on the Capitol grounds. The information contains allegations about her interactions with the media, but the pictures clearly show that these alleged acts occurred far away from the Capitol.

Most of the information includes allegations of her making statements. These statements are irrelevant to the charges against her and are clearly protected by the First Amendment.

There are no allegations that Ms. Reifschneider knowingly entered into, remained in, or acted disorderly in an area that she reasonably should have known was restricted. Accordingly, all charges in the information should be dismissed for failing to state an offense.

*The Government is selectively prosecuting her because of her political viewpoints.*

During oral arguments for the *Fischer* case, on April 12, 2024, Justices Thomas, Alito, and Gorsuch all expressed suspicion that the Government has selectively charged January 6 defendants where similarly situated defendants were not charged. Just one month earlier, on March 26, 2024, Judge Trevor McFadden of this Court admonished the Government for selectively targeting January 6 defendants "as a class." *United States v. Seefried*, 1:21-cr-00287 (TNM), 2024 WL 1299371, at *7 (D.D.C. Mar. 26, 2024). In that case, the Government openly admitted that they believe January 6 defendants should be treated more harshly than other similarly situated defendants because of their alleged views regarding a "fiercely contested presidential election" and a "political maelstrom." *Id.* Judge McFadden rightly rejected this "fact-free approach." *Id.*

Since January 6, 2021, the Court of Appeals for the District of Columbia recognized a plausible allegation of selective prosecution of political protestors when compared with Black Lives Matter protestors who engaged in similar or worse conduct. *Frederick Douglass Found. v. Dist. of Columbia*, 82 F.4th 1122 (D.C. Cir. 2023). The court held that a "selective enforcement claim has two elements: a plaintiff must demonstrate (1) he was similarly situated in material respects to other individuals against whom the law was not enforced, and (2) the selective enforcement infringed a constitutional right." *Frederick Douglass Found. v. Dist. of Columbia*, 82 F.4th 1122, 1136 (D.C. Cir. 2023). "A defendant may demonstrate that the administration of a criminal law is 'directed so exclusively <u>against a particular class of persons</u> . . . with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." *United States v. Armstrong*, 517 U.S. 456, 464-65 (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886)) (emphasis added). As Judge McFadden stated, the

Government considers January 6 defendants like Ms. Reifschneider to be a particular class deserving harsher enforcement of the criminal law. This is quintessential viewpoint discrimination under the *Frederick Douglass/Armstrong* standard, and a violation of her equal protection rights.

There are thousands of similarly situated comparators that demonstrate the Government's selective prosecution of Ms. Reifschneider. During the Black Lives Matter riots in D.C. in May, June, July, August, September, and October of 2020, riots exploded throughout the city. Officers were assaulted, property was destroyed, buildings burned, and restricted areas were entered. The Court's docket proves conclusively that these rioters were treated differently as there have not been 1,600 cases of Black Lives Matter rioters brought by the Government.

The Black Lives Matter rioters that were charged with misdemeanors speaks volumes about the many thousands that were not. One example is *United States v. Charter,* Case No. 1:20-cr-135. Charter was also charged under 18 U.S.C. 1752. He was seen on video taken by WUSA9 news1[1] in the late evening hours of June 19, 2020, standing in a restricted area over a historic statue that had just been toppled by the mob and

> pouring an unknown liquid onto the statue. He is then observed waving others away from the statue, and squatting down behind the statue where his hands are not visible. Seconds later, the statue catches fire. Charter is seen standing over the flames as it burns. Charter then continues to pour an unknown liquid onto the statue.

*Id.,* ECF 1-1. Charter is then seen "lighting a cigarette in the flames engulfing the Pike Statue." According to the Government's statement of facts:

> The Pike Statue is the property of the United States and it sustained significant damage due to the actions of the individuals involved in the aforementioned

---

[1] Available at https://www.wusa9.com/article/news/local/protests/confederate-statues-dc-roads-buildings-andmonuments/65-819b1d16-1d23-4005-b5f4-f71ca6698910 (last visited Dec. 19, 2024)

> offense. … National Mall and Memorial Parks division of the National Park Service who is responsible for managing the Pike Statue (NPS) has conducted an examination of the damage done to the statue and advised that their estimated cost to repair the statue itself, including the removal of graffiti from the base of the statue, restoration of the burnt façade of the statue, and reinstallation of the statue on its pedestal, is approximately $250,000.

On June 22, 2020, three days after he lit his cigarette from the flames engulfing the Pike Statue,

Charter returned to D.C. to destroy another historic monument.

> CHARTER is seen at approximately 7:48 PM standing inside the gated area of the Jackson Statue and directing others. CHARTER is seen grabbing ropes that are attached to the statue and adjusting them. CHARTER is boosted up onto the statue by an unknown subject and then appears to request ropes from people on the ground level. A yellow tow strap is handed to CHARTER and he unwraps it and prepares it to be attached to the statue. CHARTER hands the strap to an unknown subject that attaches the strap to the statue. CHARTER is then handed a packaged yellow rope. CHARTER unwraps the rope and attaches it to the Jackson Statue. CHARTER grabs ropes attached to the statue and uses them to descend the statue.

*Id.* According to the Government's statement of facts:

> The Jackson Statue is the property of the United States and it sustained significant damage due to the actions of the individuals involved in the offenses described herein. … While NPS has not yet completed their estimate of all the damage, NPS has advised law enforcement that the historic cannon carriages at the base of the statue were irreparably damaged, that some parts of the statue were bent and that other parts of the statue sustained damage from blunt objects and chemicals. NPS further advised your affiant that the estimated replacement cost for the historic cannon carriages is $76,000 and that the estimated cost to repair one of the bent portions of the statue is $2,000.

*Id.*

On June 26, 2020, he returned to D.C. and committed an assault. *Id.*

> On June 26, 2020, at 1800 hours, a protest was held within Lincoln Park adjacent to the 1200 block of East Capital Street, Northeast, Washington, DC. CHARTER encountered V-1, and is alleged to have assaulted V-1. V-1 responded to USPP District One and filed an assault report with Officer Adams. At 01:00 AM on June 27, 2020, CHARTER called the First District police station and spoke with Officer Adams. CHARTER admitted being involved in an incident at Lincoln Park and indicated that he would like to make a statement to tell his side of the incident.

*Id.*

Thankfully, not a single January 6 defendant is even accused of desecrating one of the historic statues or paintings in Statutory Hall, the Rotunda, or elsewhere in the Capitol, the Capitol grounds, or anywhere in Washington, D.C. It is hard to imagine the sentence that would have been imposed if one of the January 6 defendants had done so. Dominic Pezzola broke a window and is currently serving a sentence of ten years. Richard Barnett put his feet on Nancy Pelosi's staffer's desk and is currently serving a sentence of four and a half years. If a January 6 defendant had toppled a statute in statutory hall and lit it on fire, it is beyond dispute that such an individual would have been hunted by the FBI, locked in jail pretrial, charged with multiple felonies, and sentenced to - without exaggeration - decades in prison. But there is not a single January 6 defendant who even came close to the acts that Charter committed, and Charter did not suffer any of the January 6 consequences for his actions. Charter was sentenced to three years of probation, $2,600 in restitution and $25 special assessment, less than what many January 6 misdemeanor cases received.

Jason Charter and his associates engaged in conduct that "obstructed, impeded, and interfered with" law enforcement during a civil disorder but were not charged for doing so.

> [During] an organized effort to attempt to remove the Jackson Statue from its base and damage it, including the cannons at the statue's base[,] Many individuals were standing around the statue with arms interlocked to create a blockade preventing the police from approaching the statue.

*Id.* Hundreds of January 6 defendants were charged with, convicted of, and are currently serving years in prison for allegedly violating 18 U.S.C. 231(a)(3), which makes it a felony to commit "any act" that obstructs, impedes, or interferes with law enforcement during a civil disorder. The BLM riots lasted for weeks and unquestionably caused more damage and injuries than the events on January 6, yet the Government chose not to prosecute BLM protestors as it prosecutes January 6 prosecutors.

January 6 was subject to the most extensive investigation in the history of the world, and Ms. Reifschneider in particular was investigated thoroughly. The Government even insinuated at the most recent status conference that the investigation into Ms. Reifschneider is ongoing, and the Government hopes to find additional evidence to support a felony indictment in the coming months before trial.

This disparate treatment is clear and convincing evidence of selective prosecution. The inescapable conclusion is that if those Black Lives Matter protestors had committed the same acts on January 6, they would have been treated differently, just as if Ms. Reifschneider had committed the same acts that she is accused of during another riot where a different viewpoint was expressed, she would not have been charged. She is not being prosecuted for her individual conduct on January 6, but instead she is being targeted because the Government is treating her as part of a class of January 6 defendants who expressed a particular viewpoint. Accordingly, the charges should all be dismissed.

Dated: January 8, 2025                                          Respectfully submitted,

/s/ Jonathan S. Gross
Jonathan Gross
D.C. Bar No. NY0126
2833 Smith Ave., Suite 331
Baltimore, MD 21209
Telephone: (443) 813-0141
jonathansgross@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify on January 8, 2025, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ Jonathan Gross