UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 24-cr-508 (CJN) |
| : | |
| KAYLA REIFSCHNEIDER, : | |
| : | |
| Defendant. : | |

## UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Opposition to defendant Kayla Reifschneider's Motion To Dismiss the Information. ECF No. 33 ("Mot."). In the motion, the defendant offers the same arguments that have been rejected by courts across this District in a number of January 6 cases. *See* Minute Order of January 8, 2025, *United States v. Massaquoi*, 23-cr-421 (JMC) (D.D.C. Jan. 8, 2025) ("Defendant['s] motion errs by focusing on the contents of the statement of facts that the Government filed along with its complaint, rather than the contents of the information; Order, *United States v. Miller*, 21-cr-119 (CJN), ECF No. 67, at 3 (D.D.C. Dec. 21, 2021) (explaining that "[t]he circumstances between the riots" in the summer and fall of 2020 "and the uprising in the Nation's capital differ in kind and degree"). For the following reasons, the Court should similarly reject the defendant's arguments and deny the motion.

## BACKGROUND

Over 1,500 individuals have been charged thus far in connection with the attack on the U.S. Capitol on January 6, 2021. While the defendant advocates that the instant case as "perhaps the thinnest case of all," Mot. at 1, the case against Defendant Kayla Reifschneider includes evidence a degree of planning, coordination, and intent that is not present in many other January

1

6 cases. Defendant Reifschneider worked with and coordinated with others in California in anticipation of the January 6, 2021 riot.[1] *See* ECF No. 1. She called for storming government buildings. *See id.* at 3. She coordinated with others to transport weapons to Washington, D.C. for January 6, 2021. *See id.* at 3–6. She joined in calls for "war" and agreed the group's "mission" was to "arrest traitors like Nancy and Mitch and Biden etc." *Id.* at 3, 6; *see also id.* at 24. On January 6, 2021, Reifschneider unlawfully entered Capitol grounds, after specifically learning rioters were storming the Capitol. *Id.* at 8. While on Capitol grounds, Reifschneider screamed at police, calling them "fucking pieces of shit." *Id.* at 9. Reifschneider also went to an area on Capitol grounds where the media were assembled, spit toward members of the media, threw a helmet on the ground, and stomped on camera equipment. *Id.* at 12–17. After the riot, Reifschneider celebrated. When an individual asked her if rioters "beat the crap out of the police," Reifschneider responded, "We fucked them up worse than antifa and blm." *Id.* at 24. For this conduct, Reifschneider was charged, by criminal complaint on March 5, 2024, with four offenses, ECF No. 1, and was arrested on March 6, 2024, ECF No. 5.

On November 8, 2024, Reifschneider was charged by Information with three misdemeanor offenses:

    Count One:    Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1).

    Count Two:    Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2).

    Count Three:    Act of Physical Violence in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F).

---

[1] Other defendants with whom Reifschneider chose to coordinate, make common cause, and share weapons have already been tried and convicted for their conduct during the riot. *See United States v. Rodriguez, et al.*, 21-cr-246 (cases against rioters Daniel Rodriguez and Ed Badalian).

*See* ECF No. 30.

On January 8, 2025, Reifschneider filed a motion to dismiss the Information, arguing the Information fails to state offenses, and for selective prosecution.  *See* Mot.

## LEGAL STANDARD

### I.     Failure To State an Offense

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." Fed. R. Crim. P. 7(c)(1).  An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense," *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018).  "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'"  *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)).  An indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed."  *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*."  Fed. R. Crim. P. 12(b)(1) (emphasis added).  It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the United States "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*,

3

428 F.3d 241, 246–47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here.

Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). Criminal cases have no mechanism equivalent to the civil rule for summary judgment. *See, e.g.*, *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) ("[M]otions for summary judgment are creatures of civil, not criminal, trials."); *Yakou*, 428 F.3d at 246 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context."); *United States v. Oseguera Gonzalez*, 20-cr-40, 2020 WL 6342948, at *5 (D.D.C. Oct. 29, 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence). Accordingly, dismissal of a charge does not depend on forecasts from defendants of what the United States can prove. Instead, a criminal defendant may move for dismissal based on a defect in the indictment, such as a failure to state an offense. *See United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016).

Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination. Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *See, e.g.*, *United States v. Bingert*, 605 F. Supp. 3d 111, 118 (D.D.C. 2022) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *United States v. McHugh*, 583 F. Supp. 3d 1, 26–28 (D.D.C. 2022) (a motion to dismiss involves

4

the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence); *United States v. Puma*, 596 F. Supp. 3d 90, 96 (D.D.C. 2022) ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." (quoting *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009))).

## II.     Selective Prosecution

A "presumption of regularity supports . . . prosecutorial decisions" such that "in the absence of clear evidence to the contrary, courts presume that [the Attorney General and United States Attorneys] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks omitted) (quoting *United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926)).  This presumption exists because "the decision to prosecute is particularly ill-suited to judicial review."  *Wayte v. United States*, 470 U.S. 598, 607 (1985). "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake."  *Id.*; *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) ("[J]udicial authority is . . . at its most limited when reviewing the Executive's exercise of discretion over charging determinations" because "the Judiciary . . . generally is not competent to undertake that sort of inquiry." (internal quotation marks omitted) (quoting *Cmty. for Creative Non–Violence v. Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986); *Wayte*, 470 U.S. at 607).  The presumption of regularity "also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function."  *Armstrong*, 517 U.S. at 465.

5

A claim of selective prosecution seeks to rebut the presumption of regularity by "assert[ing] that the prosecutor has brought the charge for reasons forbidden by the Constitution," *id.* at 463, "such as race, religion, or other arbitrary classification," *id.* at 464 (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). That standard requires proof that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte*, 470 U.S. at 608; *see also Armstrong*, 517 U.S. at 465. "[T]he standard is a demanding one." *Armstrong*, 517 U.S. at 463. "[T]he D.C. Circuit has called for a two pronged showing that: (1) the defendant was 'singled out for prosecution from among others similarly situated' and (2) 'the prosecution was improperly motivated, *i.e.*, based on race, religion or another arbitrary classification.'" *United States v. Stone*, 394 F. Supp. 3d 1, 30 (D.D.C. 2019) (quoting *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000)); *see also Irish People, Inc.*, 684 F.2d at 946. "This is a rigorous test; 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.'" *United States v. Mangieri*, 694 F.2d 1270, 1273 (D.C. Cir. 1982) (quoting *Oyler*, 368 U.S. at 456). More recently, in the First Amendment context, the D.C. Circuit has held that, "to make out a First Amendment selective enforcement claim, the [individual] is not required to allege discriminatory intent.'" *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1144–45 (D.C. Cir. 2023). Discriminatory effect—a showing that the defendant has been treated differently from similarly situated individuals—is still required. *Id.* at 1145.

A district court judge has previously explained that an individual may be similarly situated to the defendant if*:*

> [She] committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was

as strong or stronger than that against the defendant.

*Stone*, 394 F. Supp. 3d at 31 (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)); *see also United States v. Lewis*, 517 F.3d 20, 27–28 (1st Cir. 2008). "Defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Branch Ministries*, 211 F.3d at 145 (quoting *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)). The phrase "similarly situated" is "narrowly" interpreted. *United States v. Judd*, 579 F. Supp. 3d 1, 4 (D.D.C. 2021) (quoting *Stone*, 394 F. Supp. 3d at 31). Among the factors that must be considered when determining if defendants are "similarly situated" are "the comparability of the crimes, the similarities in the manner in which the crimes were committed, the relative efficacy of each prosecution as a deterrent, and the equivalency of the evidence against each prospective defendant." *Lewis*, 517 F.3d at 27–28.

## ARGUMENT

The defendant's motion to dismiss is without merit.

### I. The Information Sufficiently States the Offenses Charged.

The fundamental problem with the defense's argument that the Information fails to state an offense is that the defense is arguing that the United States will not be able to prove its case as trial. Of course the United States disagrees, but more importantly, the defendant's argument does not go to the sufficiency of the Information at all, which is what is at issue here. Because the defendant does not make any argument that the Information is legally deficient, the motion to dismiss must be rejected.

As an initial matter, the defense has plainly confused the criminal complaint in this matter

7

with the Information, which supplanted the complaint as the operative charging instrument in this case. *Compare* ECF No. 1 (criminal complaint), *with* ECF No. 30 (Information). In fact, throughout its motion, the defense refers to the Information, but cites only factual allegations from the Statement of Facts filed in support of the criminal complaint. *See* Mot. at 1 ("The Information is 24 pages long."). *Compare* ECF No. 1-1 (a 24-page Statement of Facts in support of a criminal complaint), *with* ECF No. 30 (a 2-page Information).

As the defense knows, the pertinent charging instrument in this case is the Information. But the defense has offered nothing to argue that the allegations in the Information are insufficient for the charged offenses. "[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013). That is what the Information does here. Each count of the Information provides the date and location of the acts alleged, the defendant who is accused of the acts alleged, and alleges that the defendant committed each element. ECF No. 30. The defendant never says otherwise, nor could she.

Instead, what remains of the defendant's motion is a series of conclusory factual arguments, devoid of legal analysis—or citation to a single case. The defendant argues that any communications prior to January 6, 2021 "should be disregarded in their entirety." Mot. at 1. She argues that the defendant's presence near a police line "implies that she observed what a reasonable person would consider the 'line' she was permitted to approach." *Id.* She argues that certain relevant conduct "occurred far away from the Capitol." *Id.* at 2. While the United States contests each of these points and will contest them at trial, they have no role in a motion to dismiss. Courts have expressly rejected similar arguments from defense counsel misleadingly conflating a

complaint with an information in the past. *See* Minute Order of January 8, 2025, *United States v. Massaquoi*, 23-cr-421 (JMC) (D.D.C. Jan. 8, 2025) ("Defendant['s] motion errs by focusing on the contents of the statement of facts that the Government filed along with its complaint, rather than the contents of the information. To the extent Defendant argues that the statement of facts does not allege sufficient facts to constitute the offenses charged, that is irrelevant to this motion."). In spite of the clear standard and these prior rulings, defense counsel assembles the same flotsam and jetsam of previous, routinely rejected efforts, and repackages the arguments anew in the instant motion. But for the same reason these previous efforts were rejected, so too must they fail here. *See* Minute Order of January 8, 2025, *United States v. Massaquoi*, 23-cr-421 (JMC) (D.D.C. Jan. 8, 2025) ("To the extent he argues that something in the statement of facts is inconsistent with the essential facts alleged in the information, such an argument raises questions of fact for trial and is also irrelevant at this stage.").

Accordingly, the defendant's motion to dismiss for failure to state an offense should be denied.

**II.      The Defendant Has Not Made Out a Claim of Selective Prosecution.**

The defendant alleges that the United States has selectively targeted her for prosecution based on her political beliefs; but she fails to adduce any credible evidence—as *Armstrong* demands—supporting an inference that (1) the government has treated her differently than other similarly situated defendants, or (2) any such disparity implicates her political association. The defendant's primary argument is that the United States has prosecuted participants in the January 6 attack more aggressively than those individuals who committed crimes during riots related to Black Lives Matter protests in the summer and fall of 2020. *See* Mot. at 4. But the defendant

fails to establish that any of these individuals are similarly situated to members of the January 6 mob, who like her, made their way on the Capitol grounds and forced an unprecedented disruption in the peaceful transfer of power.[2]

### i. *The defendant is not similarly situated to the cited Black Lives Matter protesters or rioters.*

The defendant's motion makes vague, generalized assertions of "thousands of similarly situated comparators," but fails in the specifics. Mot. at 4. The defendant argues that:

> There are thousands of similarly situated comparators that demonstrate the Government's selective prosecution of Ms. Reifschneider. During the Black Lives Matter riots in D.C. in May, June, July, August, September, and October of 2020, riots exploded throughout the city. Officers were assaulted, property was destroyed, buildings burned, and restricted areas were entered. The Court's docket proves conclusively that these rioters were treated differently as there have not been 1,600 cases of Black Lives Matter rioters brought by the Government.

Mot. at 4. These types of vague, conclusory allegations have been rejected before, and should be rejected here too. To begin, the defendant may not rely on "such generalized, unsupported assertions" to "clear the high bar required to make out a selective prosecution claim." *United States v. Young*, 23-cr-241, 2024 WL 3030656, at *4 (D.D.C. June 17, 2024) (collecting cases). But, "even assuming that such conclusory assertions *could* constitute evidence of discriminatory

---

[2] Courts in this District have uniformly denied selective prosecutions brought by January 6 defendants. To the government's knowledge, the defendants filing these losing motions—which make arguments similar or identical to those raised here—were charged more severely than Reifschneider, with felonies. *See, e.g.*, Order, *United States v. Miller*, 21-cr-119 (CJN), ECF No. 67 (D.D.C. Dec. 21, 2021); *United States v. Bennett*, 21-cr-312 (JEB), 2023 WL 6847013, at *2–3 (D.D.C. Oct. 17, 2023); *United States v. McHugh*, 21-cr-453 (JDB), 2023 WL 2384444, at *13 (D.D.C. Mar. 6, 2023); *United States v. Padilla*, 21-cr-214 (JDB), 2023 WL 1964214, at *4–6 (D.D.C. Feb. 13, 2023); *United States v. Judd*, 579 F. Supp. 3d 1, 5–9 (D.D.C. 2021); Opinion and Order, *United States v. Groseclose*, 21-cr-311 (CRC), ECF No. 67 (D.D.C. Oct. 27, 2023); *United States v. Brock*, 21-cr-140 (JDB), ECF No. 57, 2022 WL 3910549, at *11–12 (D.D.C. Aug. 31, 2022); *United States v. Rhodes*, 22-cr-15 (APM), ECF No. 238, 2022 WL 3042200, at *4–5 (D.D.C. Aug. 2, 2022); *United States v. Griffin*, 549 F. Supp. 3d 49, 58–59 (D.D.C. 2021).

effect, here they don't." *Id.* The cases the defendant generally and vaguely refers to do not match the conduct at issue here, which—under the statutes charged—required conduct in restricted buildings or grounds (in the case of 18 U.S.C. §§ 1752(a)(1) & 1752(a)(2)) or on Capitol grounds (in the case of 40 U.S.C. § 5104(e)(2)(F)). *Id.* But even beyond the locational elements, "numerous judges in this District have found that the protests surrounding the death of George Floyd are not like events of January 6." *Id.* at *5. Unlike the riots the defendant cites, the actions of rioters on January 6, 2021, "endangered hundreds of federal officials in the Capitol complex. Members of Congress cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 579 F. Supp. 3d 1, 8 (D.D.C. 2021). In short, the defendant's claim must fail because, as this Court has previously held, "[t]he circumstances between the riots" in the summer and fall of 2020 "and the uprising in the Nation's capital differ in kind and degree." Order, *United States v. Miller*, 21-cr-119 (CJN), ECF No. 67, at 3 (D.D.C. Dec. 21, 2021).

The defendant cites only one specific case for comparison: that of Jason Charter, *United States v. Charter*, 20-cr-135 (D.D.C.). Mot. at 4–6. The defendant cites this as an example of "Black Lives Matter rioters that were charged with misdemeanors." *Id.* The defendant chooses to omit that Charter was arrested on a criminal complaint charging two felony counts under 18 U.S.C. § 1361, *United States v. Charter*, 20-cr-135, ECF No. 1 (D.D.C. July 1, 2020), and that he was later indicted for two felony offenses—under 18 U.S.C. § 1361 and 18 U.S.C. § 1369, *id.* ECF No. 9 (D.D.C. July 23, 2020). While the defendant ultimately pleaded guilty to a misdemeanor offense—18 U.S.C. § 1752(a)(2) & (b)(2)—*see id.* ECF Nos. 34, 37, this single example of a defendant pleading to a misdemeanor offense cannot support a claim that "the defendant was

11

'singled out for prosecution from among others similarly situated.'" *Stone*, 394 F. Supp. 3d 1, 30 (D.D.C. 2019). Moreover, as with other Black Lives Matter protesters, the circumstances are inherently distinct from those of the January 6 riot, which took place on Capitol grounds, risked the safety of Members of Congress and Secret Service protectees, and intrinsically and uniquely endangered our constitutional order and disrupted the peaceful transfer of power.[3] Charter's conduct, while serious, "did not target a proceeding prescribed by the Constitution and established to ensure a peaceful transition of power." Order, *Miller*, 21-cr-119, ECF No. 67, at 3.

The defendant confesses to the key distinction as she concludes her motion: "[I]f those Black Lives Matter protestors has committed the same acts on January 6 [at the U.S. Capitol], they would have been treated differently." Mot. at 7. That may be true, and for good reason. The January 6 riot at the U.S. Capitol was unlike any other recent riot. It, uniquely, threatened the peaceful transfer of power and our governing system. *See* Opinion and Order, *United States v. Groseclose*, 21-cr-311 (CRC), ECF No. 67 at 4–5 (Oct 27, 2023) ("[I]t is a tall task to find similarly situated individuals here considering that the January 6 riot was an unprecedented assault on the Capitol and on our democratic institutions."). It, uniquely, exposed Members of Congress and Secret Service protectees to the extended threat of mob violence on restricted, Capitol grounds. *Judd*, 579 F. Supp. 3d at 8. And every rioter, whether they personally engaged in violence or personally threatened violence or not, contributed to this harm. *See, e.g.*, *United States v. Rivera*, 21-cr-60, ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop

---

[3] The defendant's discussions of claimed discrepancies in the enforcement of 18 U.S.C. § 231, *see* Mot. at 6, is even more beside the point where, as here, the defendant is not charged with any offense under that statute. *See United States v. Young*, 23-cr-241, 2024 WL 3030656, at *4 (D.D.C. June 17, 2024).

itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption. Because [the defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions."). Given the unique harm and danger from the January 6, 2021 riot, "[i]t is hardly surprising or suspect that the Department of Justice made the January 6 riot an enforcement priority and has distinguished it from various other political protests." Opinion and Order, *Groseclose*, 21-cr-311 (CRC), ECF No. 67 at 5.

### ii. *The Defendant's Reliance on* United States v. Seefried *Is Misleading and Misplaced.*

The defendant's reliance on Judge McFadden's comments in another January 6 case, *Seefried*, also does not advance her claims. Mot. at 3. The defendant claims that Judge McFadden "admonished" the government for "selectively targeting" January 6 defendants while the government "openly admitted" to believing January 6 "defendants should be treated more harshly than other similarly situated defendants." Mot. at 3. But neither of these statements are true.

As an initial matter, the comments at issue came during a motion for release pending an appeal challenging the application of 18 U.S.C. § 1512(c)(2) and did not relate to a selective prosecution motion or claim at all. *Seefried*, 725 F. Supp. 3d 73 (D.D.C. 2024). In opposing the defendant's release, the government pointed out, among other arguments, the potential danger of releasing an individual who obstructed the election during another contentious election year. *Id.* at 77. Judge McFadden found that the government did not present adequate defendant-

13

specific evidence that the individual would reoffend, and thereby rejected the government's generalized argument of dangerousness.  *Id*.  He did not find that the government's decisions to *prosecute* these types of cases was selective or targeted.  *Id*.  The court merely found that the government needed individualized evidence that a particular defendant posed a danger and could not rely on arguments about all "people who have already gone to prison" or "January 6 defendants."  *Id.*  Indeed, even in that ruling, the court emphasized the "unique" nature of January 6, 2021, the culmination of "a unique—indeed, never-before-seen—confluence of events."  *Id.*

The defendant's misleading citation to a ruling by Judge McFadden is an unfortunate choice, given that Judge McFadden has actually denied a January 6 selective prosecution motion similar to the defendant's.  *See United States v. Judd*, 579 F. Supp. 3d 1 (D.D.C. 2021).  In doing so, Judge McFadden relied on the unique nature of the January 6, 2021 riot to rightly distinguish January 6 defendants from others who rioted in different circumstances.  *See id.* at 8 ("Even if the unique context of January 6 render few defendants similarly situated to Judd, it is precisely because of that uniqueness that the Court would find it difficult to fault the Government's prosecution of him.").  This Court should likewise reject the defendant's motion for "fail[ure] to make a 'credible showing of different treatment of similarly situated persons.'"  *Id.* (quoting *Armstrong*, 517 U.S. at 470)).

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the defendant's motion to dismiss be denied.

>     Respectfully submitted,
>
>     MATTHEW M. GRAVES
>     UNITED STATES ATTORNEY
>     D.C. Bar Number 481052
>
> By:     /s/ Anthony W. Mariano
>     ANTHONY W. MARIANO
>     MA Bar No. 688559
>     Trial Attorney, Detailee
>     Capitol Siege Section
>     United States Attorney's Office
>     for the District of Columbia
>     601 D Street N.W.
>     Washington, D.C. 20530
>     (202) 476-0319
>     Anthony.Mariano2@usdoj.gov